MARTIN B. MOORE, appellant,

*v.*

JOHN J. KRAEMER et al., respondents.

1. The rule in reference to what is necessary to charge a party with notice of a trust so as to put him upon inquiry and charge him therewith is restated as set forth in *Hoy* v. *Bramhall, 4 C. E. Gr. 572.*

2. In this case the evidence does not satisfactorily show that the mortgagee had such notice of the trust which bound the mortgagor as to charge the proceeds of the mortgage with the trust.

3. So much of the decree of the chancellor is set aside as directs that the proceeds of the mortgage be paid to the Philadelphia National Bank, and the amount due on the mortgage is directed to be paid to the complainant.

---

On appeal from a decree in *Moore, Administrator,* v. *Kraemer,* advised by Vice-Chancellor Pitney.

*Mr. J. E. P. Abbott* and *Mr. August Stephany,* for the appellant.

*Mr. Charles V. D. Joline,* for the respondents.

The opinion of the court was delivered by

ABBETT, J.

I shall assume, for the purposes of this opinion, that William Moore, junior, held the property in question as a trustee of R. L. and C. L. Nicholson at the time he executed the mortgage thereon to his mother, Jerusha Moore, for $3,000, dated December 1st, 1883. The terms of that trust are stated in the cross-bill filed by the defendant the Philadelphia National Bank, the assignee of the Nicholsons. It states that William Moore was a counselor-at-law and as such was counsel for the Nicholsons, and that he received and accepted in trust for them the title to the lands described in the mortgage; that he acquired such title by two conveyances, one from Charles B. Cooper and wife, dated December 3d, 1877, and the other from Samuel V. Adams, sheriff, dated July 27th, 1878. The trust in reference to the land is stated in the cross-bill as follows:

"In trust for said partners (the Nicholsons) to sell for them at the best obtainable price, and after deducting his fees and expenses from the proceeds of such sale to turn the balance of such purchase-money over to said partners."

Assuming that William Moore, junior, violated this trust, the question remains, Was Jerusha Moore, his mother, bound by the terms thereof, so as to affect the estate which she acquired in said premises by said mortgage? The cross-bill charges

"that said William Moore executed and delivered said mortgage to said Jerusha in her lifetime to cheat and defraud said partners and defendants, and that said Jerusha never paid said William one cent for said bond and mortgage, but that the same was executed and delivered by said William to secure to said Jerusha moneys that said William had previously misappropriated belonging to her, and that both she and her present administrator well knew that the said house and lot did not belong to said William, and that he held the title in trust as aforesaid."

The contest in this case is between the bank and the estate of said Jerusha Moore. The court below holds that if the bank can show that the holder of the mortgage either took it with notice that the mortgagor was not the real owner of the property or had

Moore *v.* Kraemer.

parted with nothing of value, and had really not lost her right to her legacy to the extent of $3,000 by the release to the executors of William Moore, senior, of the legacy given her by the will of her husband, William Moore, senior, then the bank was entitled to succeed. The court holds that the bank is entitled to succeed on both grounds. The court held that Jerusha Moore had sufficient notice of the equitable rights of the bank to put her upon inquiry, and that even if she had paid $3,000 for the mortgage that she could not resist the claim of the equitable owner of the land. The court also held that she had not parted with anything; that she had not lost her right to the $3,000 which was part of her legacy, and states that Martin V. B. Moore, as executor of his father, is liable to pay to himself as administrator of his mother this $3,000, on the ground that the release she gave to her husband's executors did not bind her, and that she had not lost her right to claim this $3,000 as so much of unpaid legacy still due her.

It seems to me clear that Mrs. Moore did part with value when she accepted the $3,000 mortgage. At the time she accepted this mortgage and another of $2,000 on other property there was due to her, under the will of her husband, the sum of $5,000 as a legacy in lieu of her dower right in his property; there was money in the hands of the executors sufficient to pay this legacy, and the funds to pay the same were in the hands of William Moore, junior, her son, who was one of the executors of her deceased husband. William Moore, junior, as such executor, had paid her the interest on this legacy up to December 1st, 1883. A short time prior to this date the executors had been cited to file their account. These executors were her two sons, William Moore, junior, and Martin V. B. Moore. The funds of the estate being in the hands of William Moore, junior, he made an arrangement with his mother by which she agreed to take in payment of the legacy due her two mortgages, one for $3,000 (the mortgage in suit), and another for $2,000 on other property.

When she accepted these mortgages she was entitled to receive $5,000 in cash. She parted with this right and executed a release to the executors of William Moore, senior, which release was

filed, and the account of the executors shows this money as paid out by the executors and received by her. The transaction is in effect the same as if William Moore, junior, one of the executors, had paid her the $5,000 out of the estate, and credited his account with such payment to her, and had then borrowed this $5,000 on the two mortgages which he gave her at that date.

The suggestion that her estate should look to the estate of William Moore, senior, and to Martin V. B. Moore, the surviving executor of that estate, to have this $3,000 of her legacy paid to her estate out of such funds as might be remaining in the estate of William Moore, senior, deceased, is to say that she should surrender a certain security for the possible result of some legal proceeding to be hereafter brought by her administrator to obtain this $3,000 and interest from the estate of William Moore, senior. Such a suggestion of surrendering a certainty for the result of a possible litigation, where other rights may have intervened and where no facts are before the court that would enable it at the present time to decide what would be the result of such a proceeding, it seems to me, does not rest upon any basis of law or equity to support it. I hold, on this point, that she has a right, and that her administrator, representing her estate, has a right on her behalf, to hold the $3,000 mortgage and the interest due on it, for the benefit of her estate, and is not obliged to look to any other suit or proceeding whatever for the recovery of these $3,000 and the interest thereon, secured by the mortgage of December 1st, 1883.

The question still remains whether or not she had such notice as would charge the proceeds of her mortgage with the equity claimed on behalf of the Nicholsons or their assignee, the Philadelphia National Bank. "The general doctrine is, that whatever puts a party upon an inquiry amounts in judgment of law to notice, provided the inquiry became a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding."

Constructive notice is established in two classes of cases: "*First,* cases in which the party charged has had actual notice that the

property in dispute was in fact charged, encumbered, or in some way affected, and the court has thereupon bound him with constructive notice of facts and instruments, to the knowledge of which he would have been lead by an inquiry after the charge, encumbrance, or other circumstance affecting the property, of which he had actual notice, and, *secondly*, cases in which the court has been satisfied, from the evidence before it, that the parties charged had designedly abstained from inquiry, for the very purpose of avoiding notice." *Hoy* v. *Bramhall, 4 C. E. Gr. 572.*

The title of Jerusha Moore to this mortgage cannot be affected by any alleged notice to Martin V. B. Moore, which was not communicated to her, at or prior to December 1st, 1883, the date she received this mortgage. If she had no notice when she took the mortgage that bound her to inquiry, then no notice or knowledge after that date, and after she had executed and delivered the release of her legacy, would affect her rights; if she was a *bona fide* holder of the mortgage for value and without notice at that date, nothing that occurred afterwards would affect her estate, and no notice to Martin V. B. Moore, which was not communicated to her, would affect her in any way, whether before or after such date.

. The only testimony in this case to charge her with notice of anything or that would make any inquiry a duty on her part is that of Charles A. Baake; he was one of the defendants in this case; he was an attorney-at-law and in the employ of William Moore from August 1st, 1883, until some time in 1886, and testifies to certain conversations which he alleges took place between William Moore, junior, and Jerusha Moore at or shortly prior to the giving of said mortgage of December 1st, 1883. This witness, whose testimony directly affects the title of Jerusha Moore to this mortgage, could have been excluded by the complainant under section 3 of " An act concerning evidence " (*Rev. p. 378*), because the suit was brought by Martin V. B. Moore in a representative capacity and Baake was a party defendant thereto. There was no reason apparent for calling the complainant as a witness, as no evidence had been given at that time which in any way charged this intestate with notice, or in any way

affected her title to the mortgage. Why this rule was not in-
voked and made effective, so as to exclude the testimony of Baake,
I cannot determine from anything in the record. In view of the
fact that both the mortgagor and mortgagee were dead and con-
sequently could not be called upon to explain or impeach what
Baake might say, and that without his testimony the bank had
no case against Mrs. Moore, it would seem to have been the
proper course for the complainant to have prevented his exami-
nation. The court below admitted the testimony, without objec-
tion from the complainant, and it is now too late for the com-
plainant to attempt to invoke the statutory rule, and Baake's
testimony must be taken for what it is worth.

He testifies that it was a notorious fact that the possession of
this property in Atlantic City was in dispute. He also testifies
that on or prior to December 1st, 1883, there was a conversation
between William Moore, junior, and Jerusha Moore, his mother,
and that she then said that she did not want to get into any diffi-
culty, whereupon William Moore assured his mother that there
was nobody that had any claim upon the property, except his
own clients, and that his services in conducting their suit were
so much that their claim would be wiped out altogether; that
Mrs. Moore replied to this, "Well, I will rely on you." The
testimony also shows that, at this date (December 1st, 1883), the
property was in possession of one Hughes, and that William
Moore told his mother that Hughes's claim amounted to nothing.
He also testifies that at that time it was a notorious fact that pos-
session could not be obtained of this property, as it was in the
possession of Hughes, who held it until August, 1884, when he
was ejected. This witness testifies that it was a long conversa-
tion, and that he was not present during all the time, but was
walking in and out and thus heard what he stated. He states
that Mrs. Moore said, "Will, I will rely on you." He also
says that there was a dispute of title between Hughes and the
purchaser about possession of the property, and that this was
the notorious fact to which he referred in his testimony; that
Hughes held possession and did not want to give up to the pur-
chaser. He also testifies that when the executor of William

Moore, junior, deceased, deeded the property to John J. Kraemer, that Kraemer took the title upon his recommendation ; that Kraemer conveyed the title to him, and that he offered to pay the complainant at one time $3,200 for this mortgage, but that the complainant would not accept it, claiming a larger sum. The reason he gives for making that offer was that he did not then know that William Moore had not settled with Nicholson & Company ; that he labored under the belief that they had been settled with, by reason of the long lapse of time ; that he did not suppose for a moment that the thing was not settled, otherwise he says he would not have offered this amount for the mortgage ; that he tried to get a rebate on account of the interest, because it was more than he had expected was due on the mortgage.

It will be remembered that the title to the property in question passed to William Moore, junior, by deed from Cooper, December 3d, 1877. Coleman L. Nicholson, one of the firm that assigned its claim to the bank, testified that William Moore had told him that he bought the property in the name of Cooper, and that he also afterwards told him that he had obtained title from Cooper to himself. He also testifies that Moore gave him some reasons for taking the title in Cooper's name, and then transferring it to himself, which were not entirely satisfactory to him, but that he does not now recollect what the reasons were. He states that his firm had perfect confidence in William Moore from the parties recommending him, and that they left this business entirely in his hands. The title thus known by the Nicholsons to be in William Moore, junior, remained there from December 3d, 1877, to August 17th, 1891, before it was attacked in any court. At this latter date the bank applied in the foreclosure suit to be made a party defendant, and filed its answer and cross-bill. The bank knew prior to November 26th, 1886, that William Moore had put this $3,000 mortgage on the property, as appears from the letter of William A. Logue, its attorney, to William Moore. It was not until after the lapse of five years that the bank sought relief in any court, and during all that period it knew that the $3,000 mortgage was upon this

property, yet no attempt was made to dispute it, and it was not until both the mortgagor and mortgagee died that the bank came into court and sought to impeach the title of Jerusha Moore to this mortgage.  The mortgage was put on record May 26th, 1885.  The reason why it was not put on record immediately after its execution and delivery is shown by the testimony. Jerusha Moore did not deem it necessary to record it, and it was only at the suggestion of her son, Martin V. B. Moore, that she finally placed it on record.  She lived until August, 1888, three years after this mortgage was put on record, yet no attack whatever was made upon it in her lifetime.  William Moore outlived his mother for a year, dying November 17th, 1889, yet still during his life no attack was made on the title to this mortgage, and now, after both the parties to the alleged conversation of December, 1883, are dead, evidence of a witness is given which might have been excluded, who details an alleged conversation which occurred over eight years previous between these parties, and of which he only heard a portion, and of which he made no note or memoranda, and it is for the court to say whether, under all the circumstances of this case, it is sufficient.  In considering the accuracy of his memory as to the words used or the substance of the conversation upon the question of notice, it is significant that he, as attorney, advised Kraemer to take the title, and that he took the title himself from Kraemer, and it is claimed that both took it as *bona fide* purchasers in good faith.  If what was actually stated at the conversation between William Moore and Jerusha Moore, at the time of the giving of this mortgage, was such as to have put her upon inquiry, and charged her with notice, how is it that this witness, who was then a clerk in the confidential employment of William Moore, and who, from the testimony, transacted a great part of his business, who drew a part of the mortgage in question and drew the release that was given, was not impressed with the fact that there was anything wrong or anything calling for inquiry on the part of Kraemer or himself?

It would be a dangerous precedent to destroy the title of a mortgagee upon such loose testimony.  If the unsupported recol-

lection of a party, of what happened eight years before, could be taken to destroy such a title, and taken, when his whole conduct seems to have proceeded on the ground that there was nothing wrong brought to his knowledge, and when the mouths of the only other parties present at the time are sealed in death, no title would be safe.

There is nothing in the case to show that Mrs. Moore abstained from making any inquiry for the purpose of avoiding notice or knowledge. I am of the opinion that so much of the decree as provides for the payment of the amount due on said mortgage to the Philadelphia National Bank, with accrued interest thereon and costs of suit, should be set aside, and that the same should be so modified that the amount due on said mortgage, with interest and costs, should be paid to the complainant.

*For reversal*—THE CHIEF-JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, MAGIE, REED, VAN SYCKEL, LIPPINCOTT, BOGERT, BROWN, CLEMENT, SMITH—13.

*For affirmance*—None.